# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JAMES COBBLE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.:  2:17-CV-53-TAV-MCLC |
| | ) | |
| 20/20 COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This civil action is before the Court on multiple motions filed by the parties.  These are: (1) defendant's Motion to Dismiss or, in the Alternative, Transfer Venue [Doc. 5]; (2) defendant's Motion for Sanctions Pursuant to 28 U.S.C. § 1927 [Doc. 7]; (3) defendant's Motion to Transfer the Claims of the Opt-In Plaintiffs [Doc. 46]; (4) defendant's Motion for Rule 16 Conference and for a Stay of Discovery and Other Pretrial Deadlines [Doc. 55]; (5) defendant's Supplemental Motion to Transfer the Claims of the Opt-In Plaintiffs [Doc. 66]; and (6) plaintiff James Cobble's[1] Expedited Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Opt-In Plaintiffs [Doc. 71].

The Court previously referred motions (3), (4), (5) and (6) above to United States Magistrate Judge Clifton L. Corker for his consideration [Docs. 58, 76–77].  On November 2, 2017, Magistrate Judge Corker entered a Report and Recommendation (the "R&R"), in

---

[1] As discussed further below, plaintiff Cobble was originally the only plaintiff to this action [*See* Doc. 1].  However, more than thirty opt-in plaintiffs have now consented to join plaintiff's suit.  For the sake of brevity, from this point forward, the Court will refer to plaintiff Cobble as "plaintiff" and to the other plaintiffs as "the opt-in plaintiffs," unless otherwise specifically noted.

which he recommends that the Court grant motions (3) and (5), transfer this action to the United States District Court for the Northern District of Texas, and deny motions (4) and (6) as moot. Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties had fourteen days from service of the R&R in which to file any objections. Plaintiff timely filed several objections to the R&R on November 16, 2017 [Doc. 87], to which defendant responded [Doc. 88]. For the reasons explained below, the Court will adopt the recommendations of the R&R in whole and transfer the claims of all plaintiffs to the Northern District of Texas.

## I. Background

### A. Factual History

This case concerns allegations of unpaid overtime wages under the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201–19. Plaintiff seeks to represent all similarly situated Field Sales Managers (the "FSMs") whom defendant employed in the past three years to service its account with Samsung Electronics America, Inc., and to whom it allegedly failed to pay overtime wages [Doc. 1 ¶¶ 1–2]. Plaintiff's complaint asserts that defendant employed hundreds of FSMs who worked over forty hours per week but did not receive sufficient overtime pay [*Id.* ¶¶ 28–29].

The heart of the present dispute is, however, identifying the proper forum for this action. Defendant submits that, as a condition of employment, all FSMs signed various employment agreements (the "Agreements") [Doc. 6 p. 2]. One of these was a Mutual Arbitration Agreement (the "MAA"), which allegedly requires the FSMs to submit all non-excepted disputes to arbitration [*Id.*]. The MAA also contains a waiver of the FSMs' right

2

to bring a collective action [*Id.* at 2–3].  Defendant notes that the MAA provides a mechanism for employees to opt out of the agreement by delivering a completed opt-out form to the Director of Human Resources within fifteen days of receipt of the MAA [*Id.* at 3 (citing Doc. 6-2 ¶ 10)].  Defendant submits that none of the FSMs involved in this litigation ever completed this procedure [*Id.*].

Defendant further submits that the Agreements contain a provision selecting Texas law to govern and fixing venue in Tarrant County, Texas [*Id.* at 13].  These choice of law and forum selection clauses reside in a document distinct from the MAA (the "Employment Agreement"), but are expressly made applicable to all of the Agreements [Doc. 6-3 pp. 19–20].  The sample Employment Agreement provided by defendant states as follows:

> These Agreements shall be governed by the laws of the State of Texas, notwithstanding the application of any choice of law principles.  The Mutual Arbitration Agreement shall be governed by the Texas Arbitration Act and the Federal Arbitration Act.  Any litigation or proceeding that may be brought by either party involving the enforcement of these Agreements or the rights, duties, or obligations of any party to these Agreements shall be brought exclusively in Tarrant County in the state of Texas.  [The FSM] hereby consents to jurisdiction and venue in Tarrant County, Texas as consideration for these Agreements.

[Doc. 6-3 p. 20].  Defendant asserts that all plaintiffs here signed identical choice of law and forum selection clauses at the time they began their employment.

Defendant has, however, been able to produce signed Agreements for only some of the FSMs.  Specifically, defendant has produced Agreements for many of the opt-in plaintiffs, but not for others and not for plaintiff Cobble [*See id.* at 2 n.2; Docs. 47-2–47-16; Docs. 66-1–66-3].  Defendant explains that many of the original images of the

electronic Agreements—including the MAAs and Employment Agreements—were lost after defendant's business relationship with its former onboarding software vendor, Enwisen, ended [Doc. 6 p. 2 n.2]. But defendant asserts that it would have been impossible for any putative plaintiff to have completed the hiring process without executing the Agreements, given the nature of the onboarding software in use at the time [*Id.* at 2]. Indeed, according to defendant, a prospective employee who tried to complete the onboarding process without signing the Agreements would have received an error message and could not have moved forward in the process [*Id.* (citing Doc. 6-3 ¶ 13)].

Defendant has provided the declaration of Director of Human Resources Chian Burks to substantiate this explanation [Doc. 6-3]. Burks explains that, to apply to work for defendant, an FSM would have had to submit an application through the Enwisen portal and provide an email address [*Id.* ¶ 3]. If defendant decided to hire her, the FSM would then have received an email with a link to the Enwisen onboarding portal and a unique username and password [*Id.* ¶ 4]. Once the FSM logged in, the onboarding software would have prompted her to complete a series of steps, including reviewing and acknowledging the Agreements [*Id.* ¶ 6]. For the Employment Agreement in particular, the FSM was required to scroll through the entire document and sign her name in the empty box next to the words "Employee Signature" [*Id.* ¶ 7]. The FSM could not advance to the next step without doing so [*Id.*]. The onboarding software would fill in the date of execution field, mark the document as "Signed Electronically," and save a copy in PDF format [*Id.* ¶ 8]. The FSM was also given an opportunity to save or print a copy [*Id.* ¶¶ 7, 10]. Burks further

explains that defendant ended its use of the Enwisen software in late 2015, after which Enwisen stored electronic copies of past Agreements "for only a relatively short window of time" [*Id.* ¶ 12]. Burks thus avers that, while defendant no longer has access to plaintiff's original Agreements, he did complete the onboarding process [*Id.* ¶¶ 11, 13].

Plaintiff denies that he ever signed an MAA, noting that defendant has been unable to produce the original, signed documents [Doc. 16 pp. 5–7]. Defendant has also been unable to produce the email that defendant allegedly would have sent to him with links to the onboarding documents [*Id.* at 6]. Plaintiff asserts that this shows no such email was ever sent, as defendant admits that several of its human resources personnel would have been copied on the email [*Id.*]. Plaintiff has also submitted a sworn declaration in which he states that he: (1) was never given nor signed an MAA; (2) has searched his email but has been unable to find an email from defendant containing an MAA; and (3) was never told that his employment was governed by an arbitration agreement [Doc. 16-1 ¶¶ 8–10]. This declaration does not, however, address the Employment Agreement or the choice of law and forum selection clauses. Furthermore, none of the opt-in plaintiffs have submitted declarations or other evidence denying they consented to the Agreements.

## B.     Procedural History

According to defendant, plaintiff and his counsel have repeatedly engaged in forum shopping to attempt to evade the Agreements' arbitration, class action, and forum selection provisions [Doc. 6 p. 3]. Defendant asserts that plaintiff's counsel originally filed a class action complaint on behalf of all FSMs in the Middle District of Florida, but then dismissed

the case after defendant's counsel brought the MAA to plaintiff's counsel's attention [*Vine v. 20/20 Commc'ns, Inc.*, No. 2:15-cv-687, Doc. 9 (M.D. Fla. Dec. 7, 2015)]. Plaintiff's counsel then filed a complaint with the National Labor Relations Board, where the parties stipulated that all of defendant's employees had to sign an MAA through the Enwisen onboarding portal before being hired [Doc. 6 pp. 3–4; Doc. 6-4 ¶¶ 5–6]. Next, plaintiff's counsel filed eighteen separate, but substantively identical arbitrations on behalf of various FSMs, including plaintiff [Doc. 6 p. 4]. According to defendant, plaintiff's counsel later amended these submissions to assert collective action claims, contrary to the MAA [*Id.*]. Defendant believes this was an attempt to sidestep the American Arbitration Association ("AAA")'s threshold review for collective action waivers [*Id.* at 4–5].

Defendant then brought suit in the Northern District of Texas, asking that court to enjoin the FSMs from pursuing class arbitration [*20/20 Commc'ns, Inc. v. Blevins*, No. 4:16-cv-810-Y, Doc. 1 (N.D. Tex. Aug. 31, 2016)]. Defendant asserts that plaintiff here and his co-defendants in that action specifically admitted to having signed MAAs and to having instituted arbitration proceedings because the MAAs required them to do so [No. 4:16-cv-810-Y, Doc. 11 pp. 2–4]. Around the same time, plaintiff's counsel filed a class action in the Northern District of Illinois, asserting the same claims as in the pending arbitrations [*Richmond v. 20/20 Commc'ns, Inc.*, No. 1:16-cv-6051, Doc. 1 (N.D. Ill. June 9, 2016)]. Defendant believes this was an attempt to take advantage of recent Seventh Circuit case law on the enforceability of class action waivers [Doc. 6 p. 5]. Defendant then moved for the Northern District of Illinois to transfer the case to the Northern District of

Texas, relying on the Agreements' forum selection clause [No. 1:16-cv-6051, Doc. 46]. The court granted this motion, finding that the forum selection clause was enforceable and applied to the plaintiffs' FLSA claims [No. 1:16-cv-6051, Doc. 82].

Following transfer, the plaintiffs in the *Richmond* case voluntarily dismissed the action [*Richmond v. 20/20 Commc'ns, Inc.*, No. 4:16-cv-994-Y, Doc. 90 (N.D. Tex. Dec. 9, 2016)]. Plaintiff Cobble's arbitration had remained pending before the AAA during this time period, with little progress made [Doc. 6 p. 6].[2] Finally, after more than a year of arbitration proceedings, plaintiff unilaterally withdrew his arbitration submission and filed a complaint in this Court, seeking identical relief [Doc. 1].

Plaintiff casts this procedural history in a different light. Plaintiff submits that he only sought arbitration in the first place because defendant's counsel told his counsel that he had signed an MAA [Doc. 16 p. 5]. Plaintiff notes that, in a cover letter to his arbitration submission, he requested that the AAA reject the filing for lack of jurisdiction if defendant did not produce a signed arbitration agreement within twenty days [*Id.*].[3] Plaintiff submits that the AAA did not ask defendant to produce an arbitration agreement for five months, at which time defendant's counsel admitted it could not locate plaintiff's Agreements [*Id.* at 5–6]. Plaintiff further asserts that, after he amended his arbitration submission to add

---

[2] The parties dispute many of the facts surrounding the arbitration proceedings, e.g., which party was at fault for the delay in selecting an arbitrator [*See* Doc. 6 pp. 4–6; Doc. 16 pp. 5–10]. These disputes are, however, immaterial to the question whether a transfer of venue is warranted.

[3] Plaintiff asserts that defendant omitted this cover letter from the copy of the arbitration submission it attached as an exhibit to its motion in an attempt to deceive the Court [Doc. 16 p. 5]. Defendant did, however, include the cover letter as part of this exhibit [Doc. 6-1 p. 10].

collective action claims, defendant failed to ever respond to the amended submission [*Id.* at 7]. Instead, defendant responded by seeking declaratory and injunctive relief in the Northern District of Texas [*See* No. 4:16-cv-810-Y, Doc. 1]. Defendant later filed motions for a preliminary injunction and temporary restraining order in that case, which plaintiff opposed [No. 4:16-cv-810-Y, Docs. 5, 27, 33, 39]. The Northern District of Texas denied both motions, defendant filed an interlocutory appeal, and the parties are currently litigating that appeal before the Fifth Circuit [No. 4:16-cv-810-Y, Docs. 35, 52–53]. Plaintiff submits that the arbitration proceedings were "essentially held in abeyance" during these federal court proceedings, until plaintiff withdrew his arbitration submission and filed this action [Doc. 16 pp. 9–10].

Defendant responded to plaintiff's complaint in this action by moving the Court to dismiss and compel arbitration or, in the alternative, to transfer the case to the Northern District of Texas [Doc. 5]. Defendant has also filed a motion for sanctions under 28 U.S.C. § 1927, based on the alleged litigation conduct described above [Doc. 7]. On July 3, 2017, defendant moved to transfer the claims of all opt-in plaintiffs to the Northern District of Texas based on the forum selection clause [Doc. 46]. Defendant later filed a supplemental motion seeking the same relief with regard to additional opt-in plaintiffs who had joined the suit in the interim [Doc. 66]. Defendant also moved for a stay of discovery pending a ruling on its motions to dismiss or transfer venue [Doc. 55].

Then, on August 18, plaintiff moved the Court to conditionally certify this matter as a collective action and to order that notice be sent to potential opt-in plaintiffs, pursuant

to 29 U.S.C. § 216(b) [Doc. 71]. The Court referred several of these motions [Docs. 46, 55, 66, 71] to Magistrate Judge Corker for his consideration [Docs. 58, 76–77]. Next, on August 31, defendant moved to stay briefing of plaintiff's conditional certification motion until the Court rules on defendant's dispositive motions [Doc. 78]. On October 11, this Court entered an order granting defendant's motion to stay, finding that principles of judicial economy favored resolution of the arbitration and venue-transfer issues before resolution of the conditional certification issue [Doc. 85].

Magistrate Judge Corker then entered his R&R on November 2 [Doc. 86]. The R&R recommends that the Court grant defendant's motion to transfer the opt-in plaintiffs' claims, transfer this entire action to the Northern District of Texas, and deny the remaining referred motions as moot [*Id.* at 11]. Magistrate Judge Corker relies on the "unrebutted sworn testimony" of Chian Burks to find that all plaintiffs—both those for whom defendant can produce signed Agreements and those for whom it cannot—executed a forum selection clause [*Id.* at 5]. Magistrate Judge Corker also finds that this clause is enforceable in light of recent Supreme Court and Sixth Circuit case law [*Id.* at 5–7 (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568 (2013); *Wong v. PartyGaming Ltd.*, 589 F.3d 821 (6th Cir. 2009))]. Finally, Magistrate Judge Court rejects plaintiff's arguments that the Agreements are procedurally and substantively unconscionable under state or federal law, that transfer would be inefficient and inequitable, and that the forum selection clause does not apply to this action [*Id.* at 7–11]. Plaintiff timely filed multiple objections to the R&R [Doc. 87], to which defendant replied [Doc. 88].

This Court held a hearing on January 11, 2018, to address defendant's motions to transfer, the recommendations of the R&R, and plaintiff's objections to the R&R [Doc. 89]. The Court had previously informed the parties that, at this hearing, they should be prepared to: (1) discuss the proper scope of the Court's review in deciding whether to transfer the claims of some or all plaintiffs; and (2) present any additional evidence or argument they wish for the Court to consider in making this decision. At this hearing, only defendant offered additional evidence for the Court to consider. Specifically, defendant sought to admit live witness testimony from Chian Burks, as well as copies of several email communications between defendant's human resources personnel and plaintiff Cobble. These emails tend to show that plaintiff did, in fact, receive an email with links to the Enwisen portal and that he eventually completed the onboarding process.

Plaintiff objected that, under Sixth Circuit precedent, the Court must consider only the existing record in deciding whether to transfer this action. Plaintiff also objected to the emails on the ground that defendant had not produced—or even suggested the existence of—these documents until one hour before the hearing. Defendant's counsel explained that, speaking with Burks that morning, she had learned of the possible existence of these documents. Burks then contacted her fellow human resources personnel, who located and sent these documents to Burks within a few hours. The Court permitted defendant to offer these documents into evidence, but reserved decision on plaintiff's scope of review, prejudice, authenticity, and hearsay objections.

## II.  Standard of Review

The district court must conduct a *de novo* review of those portions of a magistrate judge's report and recommendation to which a party objects, unless the objections are frivolous, conclusory, or general.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  "[A]bsent compelling reasons," parties may not "raise at the district court stage new arguments or issues that were not presented to the magistrate."  *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *see also Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996) ("[I]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").  After conducting the necessary review, the district court "may accept, reject, or modify, in whole or in part, the [magistrate judge's] findings or recommendations."  § 636(b)(1).

As for the merits of defendant's motions to transfer venue, 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A district court has broad discretion in considering a § 1404(a) motion to transfer.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *accord Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002).  Transfer of venue under § 1404(a) requires a two-step analysis. The court must first decide whether the claim at issue could be properly brought in the transferee district, on both venue and jurisdictional grounds.  *See* § 1404(a).  The court must next balance all of the relevant public and private

factors to decide whether the litigation in question would proceed more conveniently and whether the interests of justice would be better served through transfer to a different forum. *Stewart Org.*, 487 U.S. at 29. The movant bears the burden of proving both the existence of a proper alternative venue and that the "convenience of the parties and witnesses, and the interest of justice[,] warrant transfer." *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 936 (E.D. Tenn. 2006); *see also United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999) (noting that the relevant considerations under § 1404(a) "include the plaintiff's choice of forum, location of documents, convenience of witnesses, possibility of prejudice in either forum, and the practical problems associated with trying the case expeditiously and inexpensively").

But this analysis changes when a valid forum selection clause is present. In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, the Supreme Court made clear that "[w]hen the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." 134 S. Ct. at 581. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied" when such a clause is present. *Id.* The reason for this is that that the overriding consideration under § 1404(a)— the interests of justice—will be best served by enforcement of a valid forum selection clause "[i]n all but the most unusual cases." *Id.* at 583.

The Court further explained that the presence of a forum selection clause requires courts to adjust the § 1404(a) analysis in three specific ways. First, "the plaintiff's choice

of forum merits no weight." *Id.* This flips the usual preference for the plaintiff's venue selection, such that "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581–82. Second, the court "should not consider arguments about the parties' private interests"—chiefly, convenience to the parties and their witnesses. *Id.* at 582. Thus, the court should consider only the relevant public-interest factors, such as "the administrative difficulties flowing from court congestion [and] the local interest in having localized controversies decided at home." *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Finally, unlike in the ordinary transfer under § 1404(a), the choice-of-law rules for the transferee forum, rather than the transferor forum, will apply. *Id.* at 582–83.

However, the alternative calculus and shifted burden discussed in *Atlantic Marine* apply only if the movant carries the "significant burden" of proving that the parties did, in fact, execute a forum selection clause. *Am. Water Heater Co. v. Taylor-Winfield Techs., Inc.*, No. 2:16-cv-125, 2017 WL 4293228, at *6 (E.D. Tenn. Sept. 27, 2017). In making this determination, the Court has "broad discretion" to examine a variety of evidence, including facts beyond the pleadings. *See Kamrass v. Jefferies, LLC*, No. 1:17-cv-964, 2017 WL 4271830, at *2 (N.D. Ohio Sept. 26, 2017); *see also Intelligent Bus. Innovations, LLC v. All. Computing, Inc.*, No. 2:16-cv-11862, 2016 WL 4524722, at *2–3 (E.D. Mich. Aug. 29, 2016) (determining whether the parties executed a forum selection clause so as to warrant transfer under § 1404(a) by considering affidavits and other documents).

## III. Analysis

Defendant argues that the Court should transfer the claims of all plaintiffs to the Northern District of Texas under 28 U.S.C. § 1404(a), in light of the forum selection clause all plaintiffs executed [Docs. 6, 31, 47, 65–66, 75, 88]. Plaintiff denies having entered into a forum selection agreement and alternatively argues that, even if such an agreement did exist, it would be unenforceable [Docs. 16, 63, 74, 87]. To resolve this dispute, the Court must first make a threshold factual determination whether all plaintiffs to this action consented to an Employment Agreement containing a forum selection clause. If the Court finds that some or all plaintiffs did enter into such an agreement, the Court must then determine whether this forum selection clause is enforceable.

### A. The Existence of a Forum Selection Agreement

The Court must first determine whether the parties entered into a contract containing a forum selection clause fixing venue in Tarrant County, Texas. To do so, the Court must address three specific issues: (1) what body of law's principles of contract formation apply; (2) what evidence the Court may consider in applying those principles to this case; and (3) whether defendant has met its burden of proving a forum selection agreement. As explained further below, the Court finds that, under Texas substantive law, defendant has sufficiently established that all plaintiffs consented to a forum selection clause.

#### 1. Choice of Law

Because the parties here dispute the existence of signed Employment Agreements between certain plaintiffs and defendant, principles of substantive law concerning lost or

destroyed contracts are implicated. The Court must thus determine what body of law—federal law, or the law of some state—governs this inquiry. Defendant contends that Texas law applies, relying on the choice of law provision the Employment Agreements allegedly contain [*See* Doc. 6-3 p. 20 ("[The] Agreements shall be governed by the laws of the State of Texas, notwithstanding the application of any choice of law principles")]. Plaintiff Cobble argues that Tennessee law applies—at least as to him—because he is a Tennessee resident and carried out his duties as an FSM in that state.

The issue at hand is a fairly novel one. While many courts—including the Supreme Court in *Atlantic Marine*—have confronted the question whether a forum selection clause is enforceable, few have had to determine whether such a clause exists in the first place. This is not a diversity action, so ordinarily federal law—both substantive and procedural—would apply. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378–79 (2012). Indeed, as discussed further below, federal law governs the enforceability of the forum selection clause. *Wong*, 589 F.3d at 826. However, the threshold determination whether a contract containing a forum selection clause exists is a question of state substantive law. *Kutite, LLC v. Excell Petrol., LLC*, No. 2:13-cv-2106, 2013 WL 5550091, at *2 (W.D. Tenn. Oct. 8, 2013); *Rassoli v. Intuit Inc.*, No. H-11-2827, 2012 WL 949400, at *2 (S.D. Tex. Mar. 19, 2012); *Hot Shot Servs., Inc. v. Nanney*, No. 9-cv-629, 2010 WL 11493293, at *3 (D.N.M. Apr. 23, 2010); *M.K.C. Equip. Co. v. M.A.I.L. Code, Inc.*, 843 F. Supp. 679, 683 (D. Kan. 1994). Thus, the Court must determine which state's law of contract formation governs the existence of a forum selection agreement here.

"In a federal question case, choice of law principles are derived from federal common law." *Enter. Grp. Planning, Inc. v. Falba*, 73 F.3d 361, 1995 WL 764117, at *2 (6th Cir. 1995) (table opinion). Absent a more specific tenet of federal common law, federal courts follow the Restatement (Second) of Conflict of Laws. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006) (citing *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 570 (6th Cir. 2001)). "Under the Restatement, courts should enforce the parties' choice of law if the issue 'is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.'" *Bennett v. Am. Online, Inc.*, No. 06-13221, 2007 WL 2875169, at *13 n.6 (E.D. Mich. Sept. 28, 2007) (quoting Restatement (Second) of Conflict of Laws § 187(1) (Am. Law Inst. 1988)). And, even if the issue is not one the parties could have resolved themselves, the court should still honor their choice of law unless: (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice"; or (2) "application of the law of the chosen state would be contrary to a fundamental policy of [the] state" whose law would govern absent a choice of law clause. Restatement (Second) of Conflict of Laws § 187(2).

Application of these principles here is somewhat circular. If the parties executed a choice of law agreement specifying Texas law, then barring unusual circumstances, the Court would enforce that agreement. *See id.* § 187(1)–(2). But here, the existence of a contract containing that clause is the same question to which the substantive law of some state must be applied. Plaintiff has not argued—either in his written submissions or at the

January 11 hearing—that the Agreements' choice of law clause is invalid or unenforceable. Rather, plaintiff has simply argued that he never signed or otherwise consented to this clause and that, absent such an agreement, ordinary choice of law principles would favor Tennessee. Still, despite the circularity of the relationship between the choice of law and substantive law principles involved here, the Court finds that the familiar approach of Restatement section 187 governs its analysis. Indeed, a recent Sixth Circuit decision suggests that, in determining the proper source of law for an issue of contract formation, a choice of law clause within the alleged contract is the starting point. *See Masco Cabinetry Middlefield, LLC v. Cefla N. Am., Inc.*, 637 F. App'x 192, 197 (6th Cir. 2015) (applying Michigan law, as specified in a choice of law provision, in determining whether a contract was formed between various parties in the first place).[4]

Of course, principles of contract formation—such as "those involving capacity, formalities and substantial validity"—are normally not subject to private alteration. Restatement (Second) of Conflict of Laws § 187 cmt. d. Even so, Texas has a "substantial relationship" to the parties and transactions involved here, as defendant is headquartered

---

[4] Indeed, the dissent in *Masco* criticized the majority for "put[ting] the cart before the horse by first deciding that Michigan law governs under a contractual choice-of-law provision, then applying Michigan law to determine whether there is a contract." 637 F. App'x at 202 n.3 (White, J., dissenting). Nonetheless, that is the approach a majority of the Sixth Circuit panel took. The Court notes that some district courts in this circuit "have generally ignored [choice of law] clauses when dealing with questions of contract formation." *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641, 646 (N.D. Ohio 2007) (citing *Converge, Inc. v. Topy Corp.*, No. 04-72235, 2005 WL 3434799, at *3 (E.D. Mich. Dec. 14, 2005); *Detroit Tigers, Inc. v. Ignite Sports Media, LLC*, 203 F. Supp. 2d 789, 794 (E.D. Mich. 2002)). But these decisions predate *Masco* and, in any event, are not binding on this Court. Moreover, for the reasons discussed previously in this section, the Court finds the majority's approach in *Masco* to be the more appropriate path.

in and maintains its sales, marketing, distribution, and personnel departments in Texas. *Id.* § 187(2)(a). Furthermore, plaintiff has not argued that application of Texas law "would be contrary to a fundamental policy" of Tennessee law, and the Court is unaware of any such conflict. *Id.* § 187(2)(b). Thus, the Restatement approach, as incorporated by federal common law, requires the Court to apply Texas contract law when determining whether defendant has proven the existence of a forum selection agreement.

Under Texas law, "[w]hen a written, signed contract is lost or destroyed such that the party seeking to prove or enforce the agreement is unable to produce the written agreement in court, the existence and terms of the written contract may be shown by clear and convincing parol evidence." *Bank of Am. v. Haag*, 37 S.W.3d 55, 58 (Tex. App. 2000); *accord In re Olshan Found. Repair Co. of Dallas, LLC*, 192 S.W.3d 922, 925 (Tex. App. 2006); *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 267 n.1 (Tex. App. 1994); *see also Chandler v. Brown*, 301 S.W.2d 720, 722 (Tex. Civ. App. 1957) ("[A] written instrument is merely evidence of a right, and its loss does not destroy the right itself."). On the other hand, if the evidence demonstrates that the contract was intentionally destroyed, the party seeking to enforce the contract must rebut an inference of fraudulent intent or purpose. Kenneth B. Sills, 50 *Texas Jurisprudence* § 7 (3d ed. 2007).

However, even if the Court were to find instead that Tennessee law controls, the same fundamental contract principles would apply. Like Texas law, Tennessee law permits a party to prove the existence of a lost or destroyed contract by "some clear, cogent and convincing evidence of the contents of the instrument." *Aetna Cas. & Sur. Co. v. Traywick*,

1987 WL 11769, at *2 (Tenn. Ct. App. June 3, 1987) (quoting *Hammer v. Am. United Life Ins.*, 141 S.W.2d 501, 504 (Tenn. Ct. App. 1940)); *see also McKinnis v. Hammons*, No. E2013-02733-COA-R3-CV, 2014 WL 5487789, at *5 (Tenn. Ct. App. Oct. 30, 2014) ("[E]nforcement of a contract is not prevented by the fact that the written document has been lost or destroyed; its contents may then be proved by oral testimony." (quoting *Petty v. Estate of Nichols*, 569 S.W.2d 840, 847 (Tenn. Ct. App. 1977))).

## 2. Scope of Review

The Court must next determine what facts it may consider in deciding whether defendant has met its burden of proving the existence of a forum selection agreement between the parties to this action. As discussed above, the Court may ordinarily consider evidence and testimony beyond the pleadings in ruling on a § 1404(a) motion to transfer. *See Kamrass*, 2017 WL 4271830, at *2; *Intelligent Bus. Innovations*, 2016 WL 4524722, at *2–3. Thus, the Court will consider the sworn declarations of plaintiff and Chian Burks, the sample Agreements provided by defendant, and the other documents attached to the parties' filings in deciding whether a forum selection agreement exists.

What the parties dispute is whether the Court may consider the additional evidence defendant offered at the January 11 hearing. This evidence consisted of further testimony from Burks elaborating on the matters addressed in her declaration, as well as copies of emails between defendant's human resources personnel tending to suggest that plaintiff Cobble signed the Agreements. Plaintiff raised multiple objections to this evidence. First, plaintiff argued that, under Sixth Circuit precedent, the Court is confined to the existing

record in resolving defendant's dispositive motions and plaintiff's objections to the R&R.

Second, plaintiff objected to the emails as hearsay. Third, plaintiff noted that defendant's counsel did not produce the emails until an hour before the hearing, which prejudiced plaintiff's counsel's ability to review these emails with his client and challenge their meaning or authenticity. Fourth, and relatedly, plaintiff argued that defendant failed to carry its burden of proving the authenticity of the emails.

At the outset, the Court notes that only the first of these objections applies to Burks's testimony beyond her exposition of the emails. As for that objection, plaintiff did not identify what particular authorities he relies on in claiming that the scope of the Court's review is limited to the pre-hearing record. The Court finds this argument particularly odd because plaintiff himself requested an evidentiary hearing on his objections to the R&R, and there would be little point in holding an evidentiary hearing without permitting the admission of new evidence [*See* Doc. 87 p. 2 ("While Plaintiff believes that Defendant's Motion must be denied based on th[e existing] evidence, at the very least it creates an issue of fact that requires an evidentiary hearing to resolve.")]. Furthermore, Federal Rule of Civil Procedure 72 expressly provides as follows:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; *receive further evidence*; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3) (emphasis added). In keeping with this authority, the Court ordered the parties to present at the hearing any additional evidence they wish for the Court to

consider. Thus, the Court will deny this objection and will consider Burks's testimony to the extent it concerned matters other than the emails.

However, as for defendant's objections to the emails and the pertinent portions of Burks's testimony, the Court finds that it need not resolve these objections. As discussed further below, the other evidence defendant has presented is sufficient to carry its burden of proving the existence of a forum selection agreement. Thus, the Court will overrule these objections as moot and will disregard the emails and Burks's corresponding testimony related to the emails, in deciding whether to transfer this action under § 1404(a).

### 3. Application to Facts

Having determined the applicable law of contract formation and the evidence the Court may consider in applying that law, the Court must determine whether defendant has met its burden of proving "the existence and terms of the written [forum selection clause] . . . by clear and convincing parol evidence." *Haag*, 37 S.W.3d at 58; *accord Traywick*, 1987 WL 11769, at *2. For the reasons explained below, the Court finds that defendant has carried this burden and proved the existence of a forum selection agreement.

Defendant argues that the Employment Agreements signed by all FSMs contain provisions that unambiguously require the litigation of all disputes between the parties to occur in Tarrant County, Texas [Doc. 6-3 p. 20]. The Northern District of Texas includes Tarrant County, and "the widely-accepted rule [is] that forum selection clauses that use the term 'in [a certain state]' express the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state." *Branch v. Mays*, 265 F.

Supp. 3d 801, 807 (E.D. Tenn. 2017) (alteration in original) (quoting *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (5th Cir. 2010)).  Defendant asserts that, in light of Burks's declaration and other documents it has provided, it was not possible for anyone to become an FSM without signing the Employment Agreement.

In addition, at the January 11 hearing, defendant elicited testimony from Chian Burks that further elaborated on the subject matter of these documents.  Burks testified that all prospective employees would have received an email from Enwisen containing links to the onboarding portal—but not the Agreements themselves—at or around the time their employment began.  Burks further testified that no employee could have completed the hiring process or received a paycheck without clicking through and executing all Agreements on the Enwisen portal.  Specifically, according to Burks, an employee's W-4 and I-9 forms—necessary prerequisites to issuance of a first paycheck—could not be uploaded into defendant's system until completion of this onboarding process.  In light of this evidence, defendant asserts it has met its burden of proving by clear and convincing evidence that all plaintiffs executed forum selection clauses.

Plaintiff responds that there is no evidence that he—or the opt-in plaintiffs for whom defendant has been unable to produce Agreements—ever received or consented to a forum selection clause.  Plaintiff notes that defendant claims it sent emails to all prospective FSMs with links to the onboarding documents but has been unable to produce copies of such emails, even though defendant's human resources personnel were allegedly copied on them.  Plaintiff also notes that defendant has produced Agreements for certain FSMs whose

claims it learned of *after* the date on which it learned of plaintiff Cobble's claim. Plaintiff further argues that defendant cannot prove it ever received signed Agreements from certain plaintiffs and then signed these documents itself. Thus, plaintiff asserts that the offer, acceptance, and mutual assent necessary for contract formation are lacking. Finally, plaintiff argues that defendant cannot benefit from what he terms the knowing spoliation of evidence by defendant's agent, Enwisen. Plaintiff notes that Enwisen destroyed certain employees' Agreements after defendant received notice of the nationwide class action that plaintiff's counsel filed in the Middle District of Florida.

Plaintiff also objects to the R&R on the same grounds discussed above. Plaintiff chiefly takes issue with Magistrate Judge Corker's factual finding that all opt-in plaintiffs executed a forum selection clause [Doc. 86 p. 5]. Plaintiff argues that Magistrate Judge Corker erred in relying on the "unrebutted sworn testimony" in the declaration of Chian Burks [*id.*], as plaintiff has also submitted a sworn declaration denying that he ever received or signed a forum selection agreement [Doc. 16-1]. Plaintiff further takes issue with Magistrate Judge Corker's observation that plaintiff has not challenged defendant's explanation for the loss of the signed Agreements, noting that he has repeatedly asserted that no such contracts existed in the first place. In sum, plaintiff argues that the R&R is "fundamentally flawed" because it simply accepts defendant's conclusory allegations in the face of plaintiff's contrary assertions and evidence [Doc. 86 p. 5].

At the January 11 hearing, plaintiff further emphasized the lack of evidence that one of defendant's agents ever signed the Agreements after plaintiff allegedly completed the

onboarding process.[5]  Specifically, plaintiff elicited testimony from Burks that, while she acknowledged an expectation that one of defendant's agents would sign the Agreements, she was unaware of who signed the Agreements for plaintiffs here on defendant's behalf. Later testimony from Burks indicated, however, that the Agreements were prepopulated with the relevant date and an electronic signature of one of defendant's agents at the time the employee began the onboarding process.  In response, plaintiff observed that the sample forms provided by defendant for purposes of this litigation [Doc. 6-3 pp. 14–26] lack such prepopulated signatures.  Plaintiff also noted that defendant had not produced W-4 or I-9 forms for the FSMs involved in this litigation.

After carefully considering the parties' arguments on this issue, the Court agrees with Magistrate Judge Corker that defendant has carried its burden of proving the existence of a forum selection agreement by clear and convincing evidence.  The declaration of Chian Burks explains, in great detail, the nature of the onboarding software developed by Enwisen and used by defendant at all relevant times [Doc. 6-3].  This explanation convincingly establishes that none of the plaintiffs could have completed the hiring process for the FSM position without executing the Agreements, including the forum selection clause.  Indeed, defendant has produced executed Agreements for many of the opt-in plaintiffs, both in this

---

[5] At the hearing, plaintiff's counsel also elicited testimony suggesting that, according to the emails produced by defendant, plaintiff Cobble began performing his duties as an FSM for defendant several days before he completed the onboarding process.  In response, defendant's counsel elicited testimony that, while plaintiff may not have completed the entire process before starting work, he would not have been permitted to continue work and would not have been paid had he not eventually completed that process.  Given plaintiff's objections to the admission of these emails, the Court does not resolve this dispute.  However, even if it were to consider this evidence, the Court finds it would not alter the conclusions it reaches in this section.

and related litigation.  Defendant has also sufficiently explained the loss of certain of these documents—once it ended its relationship with Enwisen, defendant had only a limited period of time to download the electronically executed Agreements.  Thus, defendant was able to retrieve executed Agreements for only certain employees.

Furthermore, plaintiff has failed to offer any convincing rebuttal to defendant's explanation of these events.  Instead, plaintiff has merely repeated his claim that defendant has produced no evidence of an agreement, while he has provided a sworn declaration that he never signed any agreement [Doc. 16-1].  The Court notes, at the outset, that none of the opt-in plaintiffs have filed similar declarations.  Indeed, as plaintiff concedes [Doc. 74 p. 3], defendant has produced executed Agreements for at least half of the opt-in plaintiffs [Docs. 47-2–47-16, 66-1–66-3], so plaintiff can resist transfer of those claims only on grounds of enforceability.  *See infra* Section III.B.  But, in any event, plaintiff's declaration does not actually contradict Burks's testimony.  Plaintiff merely denies ever signing an MAA; he says nothing about the Employment Agreement or the forum selection clause it allegedly contained [*See* Doc. 16-1 ¶¶ 8–10].  And plaintiff has offered no other evidence to contravene defendant's convincing explanation of the absence of executed Agreements for certain FSMs.  The Court notes that plaintiff received six weeks' advance notice of his right to offer such evidence at the January 11 hearing.

Moreover, plaintiff's argument that defendant has not shown its own agents signed the Agreements is likewise unpersuasive.  Unless the Statute of Frauds applies, a party may express assent to a contract through verbal or nonverbal conduct—such as offering it to

another party for review and execution. *See* Restatement (Second) of Contracts § 19 (Am. Law Inst. 2013) (providing that a party's "manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act," so long as the party "knows or has reason to know that the other party may infer from his conduct that he assents"); *accord In re Marriage of Eilers*, 205 S.W.3d 637, 642–44 (Tex. App. 2006). Even if the Statute of Frauds does apply, only the party against whom enforcement is sought need to have signed the relevant writing. *EP Operating Co.*, 883 S.W.2d at 267. Otherwise, as noted above, a party may prove the existence of a lost or destroyed contract through parol evidence. *Olshan Found.*, 192 S.W.3d at 925. Regardless, as Burks explained at the January 11 hearing, the Agreements contained on the Enwisen portal were apparently automatically populated with the electronic signature of one of defendant's agents. The executed Agreements defendant has provided for the opt-in plaintiffs appear to substantiate this claim [*See, e.g.*, Doc. 47-3 p. 8]. And, outside of observing that the sample Agreements provided by defendant lack such prepopulated signatures—a fact that strikes the Court as unremarkable, given that these documents appear to be nothing more than mere templates—plaintiff has not disputed this explanation.

Finally, plaintiff's theory regarding the missing emails from defendant to the FSMs is unpersuasive. As defendant notes, the email sent to prospective FSMs contained only links to the onboarding portal, not the Agreements themselves, and plaintiff has not averred that he is unable to locate *that* email. And, in any event, the parties' failure to retrieve a

four-year-old email is not convincing evidence of its nonexistence.[6]  Accordingly, the

Court finds that defendant has proven by clear and convincing evidence that no person

could have been hired as an FSM for defendant without completing the Enwisen

onboarding process.  Thus, the Court concludes that all plaintiffs to this action signed an

Employment Agreement containing a forum selection clause.[7]

### B.    The Enforceability of the Forum Selection Agreement

Having concluded that a forum selection agreement exists between all plaintiffs here

and defendant, the Court must finally determine whether this agreement is enforceable, and

therefore whether a transfer of venue is warranted.  As explained further below, the Court

finds that the parties' forum selection agreements are enforceable and controlling.

### 1.    Enforceability Analysis

Federal law governs the enforceability of a forum selection clause in the context of

a § 1404(a) motion to transfer, regardless of whether state substantive law governs the

---

[6] The Court notes that, at the January 11 hearing, defendant did produce the relevant emails with respect to plaintiff Cobble.  For the reasons explained above, the Court does not consider these documents as substantive evidence for purposes of this opinion.  *See supra* Section III.A.2.

[7] The R&R does not address plaintiff's spoliation argument, as plaintiff did not raise this point in response to defendant's motions to transfer the opt-in claims.  Regardless, this argument lacks merit.  Plaintiff's spoliation claim rests on the theory that Enwisen was defendant's agent and, thus, that the destruction of the Agreements is attributable to defendant.  But the Burks declaration asserts that Enwisen stopped storing the Agreements sometime *after* it and defendant ended their business relationship [Doc. 6-3 p. 5], and plaintiff has not disputed this assertion.  As such, it is unlikely that Enwisen was defendant's agent at that time.  Moreover, plaintiff offers no proof of a culpable mental state—one essential element of a spoliation theory.  *See Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554 (6th Cir. 2010).  Finally, the Court notes that plaintiff has not pursued this argument since its original response [Doc. 16] to defendant's motion to dismiss or transfer [Doc. 5], including at the January 11 hearing.

enforceability of the contract as a whole. *Stewart Org.*, 487 U.S. at 32. The Supreme Court has "announced a federal policy favoring enforcement of forum selection clauses and has held that such clauses 'should control absent a strong showing that [they] should be set aside.'" *Wong*, 589 F.3d at 826 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991)). As the Supreme Court made clear in *Atlantic Marine*, "extraordinary circumstances" are required to ignore a forum selection agreement between the parties. 134 S. Ct. at 581. The Sixth Circuit has identified three key considerations that bear on this inquiry: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d at 828; *accord Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999) (citing Restatement (Second) of Conflict of Laws § 80 cmt. c (Am. Law Inst. 1988)). The party opposing enforcement of the forum selection clause bears the burden of proving its invalidity. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995).

Defendant argues that this case lacks any "extraordinary circumstances" warranting disruption of the forum selection clause. Defendant notes that it is headquartered in Tarrant County, Texas, that its sales, marketing, distribution, and personnel departments are based in Fort Worth, Texas, and that it does not maintain an office in Tennessee. Defendant also asserts that no administrative issues such as court congestion will hinder transfer, and that the Northern District of Texas has as much—or more—of an interest in this case as this

Court. Finally, defendant argues that the forum selection clause is enforceable under the three *Wong* factors.[8] Specifically, as to the first factor, defendant asserts that there is no evidence of fraud here at all—least of all concerning the Employment Agreement or its forum selection clause. As to the second factor, defendant argues that plaintiff has not shown the Northern District of Texas "would ineffectively or unfairly handle the suit," *Wong*, 589 F.3d at 828, and that plaintiff waived his right to complain of any inconvenience from litigating this action in that forum when he consented to venue there. And, as to the third factor, defendant contends there is no evidence that transfer would be so inconvenient as to be unjust or unreasonable, as plaintiff would have access to the same substantive remedies in the Northern District of Texas.

Plaintiff, by contrast, asserts that the forum selection clause is inapplicable and unenforceable, even if it does exist. First, plaintiff argues that the language of the forum selection clause does not encompass FLSA claims for unpaid overtime wages, but rather only the rights and duties of the parties under the Agreements. Second, plaintiff asserts that the Supreme Court has made clear that a forum selection clause should not be given dispositive weight [Doc. 63 p. 10 (citing *Stewart Org.*, 487 U.S. 22)]. Third, plaintiff claims that this forum selection clause is an unenforceable contract of adhesion, under the standard the Tennessee Supreme Court adopted in *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996). Fourth, plaintiff argues that the forum selection clause is procedurally

---

[8] Defendant alternatively argues that the Court lacks personal jurisdiction over it with respect to all but one of the opt-in plaintiffs' claims. The Court need not reach this issue because it ultimately finds that all plaintiffs entered into valid forum selection agreements with defendant.

and substantively unconscionable under Tennessee law. Finally, plaintiff argues that the forum selection clause is unconscionable and unenforceable under federal law, and that transfer would produce an inefficient and inequitable outcome.[9]

In the R&R, Magistrate Judge Corker finds that the forum selection clause is valid and rejects plaintiff's arguments to the contrary. After carefully considering the parties' respective positions, the Court agrees with and adopts the R&R's recommendation on this issue. As a threshold matter, the Court agrees with Magistrate Judge Corker that the terms of the forum selection clause apply to the violation of 29 U.S.C. § 207 alleged in the complaint [Doc. 1 ¶¶ 41–49]. Plaintiff asserts that the forum selection clause applies only to enforcement of the rights and duties arising under the Agreements themselves. The Court finds, however, that the plain language of the clause cannot bear this interpretation. The relevant provision states that it covers "[a]ny litigation or proceeding that may be brought by either party involving the enforcement of these Agreements *or the rights, duties, or obligations of any party to these Agreements*" [Doc. 6-3 p. 20 (emphasis added)]. Indeed, the Northern District of Illinois considered this precise issue in *Richmond* and came to the same conclusion as the R&R [No. 1:16-cv-6051, Doc. 82 p. 3].

Turning next to the *Wong* factors, the Court agrees with Magistrate Judge Corker and defendant that all three favor enforcement of the parties' forum selection agreements. First, plaintiff has not alleged any fraud or duress with respect to the forum selection clause.

---

[9] The Court notes that, at the January 11 hearing, plaintiff's counsel focused his arguments on the existence, rather than the enforceability, of a forum selection agreement.

*See Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (noting that, "[u]nless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to the entire contract" is insufficient (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1138 (6th Cir. 1991))). And plaintiff's argument that the forum selection clause is unconscionable under Tennessee law lacks merit. The validity of a forum selection clause is a matter of federal, not state law, *Stewart Org.*, 487 U.S. at 32, so plaintiff's reliance on Tennessee case law regarding unconscionability is misplaced.[10]

Plaintiff has likewise failed to demonstrate that the forum selection clause is unconscionable under federal law. Plaintiff argues that the Agreements are procedurally unconscionable because they are contracts of adhesion, offered to prospective employees on a take-it-or-leave-it basis. Plaintiff further asserts that the forum selection clause is substantively unconscionable because it solely benefits defendant, without any reciprocal benefit to the FSMs. Both of these arguments are unpersuasive. As for procedural unconscionability, the Supreme Court has squarely rejected the claim "that a nonnegotiated forum-selection clause in a form . . . contract is never enforceable simply because it is not

_____

[10] As Magistrate Judge Corker notes [Doc. 86 pp. 7–8], even under Tennessee law, the mere fact that an agreement is adhesive in nature does not make it unconscionable. *See Buraczynski*, 919 S.W.2d at 320–21 (upholding the enforcement of arbitration agreements that, while contracts of adhesion, did not go "beyond the reasonable expectations of an ordinary person"). Plaintiff fails to offer any argument as to how the forum selection clause here defies the reasonable expectations of an ordinary person. Thus, plaintiff's unconscionability argument would fail even if Tennessee law did govern this inquiry.

the subject of bargaining." *Shute*, 499 U.S. at 593; *see also Lorenzana v. 2nd Story Software, Inc.*, No. 4:12-cv-21, 2012 WL 2838645, at *4 (W.D. Ky. July 10, 2012) (noting that the "argument that [a] forum selection clause is unenforceable because the [a]greement is an adhesion contract has been rejected by the United States Supreme Court and the Sixth Circuit"). Because plaintiff merely asserts that form contracts are never enforceable, without offering a specific explanation as to how defendant procured these Agreements through unconscionable means, this argument fails.

As for substantive unconscionability, that phrase generally refers to "contract terms that are unreasonably favorable to the other party." *Pomeroy v. Lincoln Nat'l Life Ins. Co.*, No. 12-cv-1743, 2012 WL 5364367, at *4 (N.D. Ohio Oct. 30, 2012); *accord Wallace v. Red Bull Distrib. Co.*, 958 F. Supp. 811, 824 (N.D. Ohio 2013); *Visalus Inc. v. Bohn*, No. 13-10366, at *4 (E.D. Mich. Apr. 24, 2013). Here, the forum selection clause does not limit access to the federal courts or curtail the FSMs' substantive FLSA rights. Rather, it merely selects a venue for litigation—a long-recognized practice. *See, e.g.*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (holding that forum selection clauses are "prima facie valid" under federal admiralty law). Furthermore, as the R&R notes, it is not clear that the forum selection agreements here are to defendant's sole benefit. Because the FSMs reside in many different states [Doc. 47 p. 3], establishing a specific venue for the litigation of employer–employee disputes at the outset of the employment relationship may be generally advantageous for all parties. And the Court cannot say that selecting the site

of defendant's headquarters for that venue is patently unreasonable.  Therefore, plaintiff's substantive unconscionability argument likewise fails.

Next, as for the second *Wong* factor, the Court finds no reason to believe that the Northern District of Texas "would ineffectively or unfairly handle the suit."  589 F.3d at 828.  The Northern District of Texas is as competent as this Court to hear an FLSA action and resolve the pending arbitration issue.  Further, the fact that the transferee forum might apply "[d]ifferent or less favorable . . . law or procedure alone does not satisfy this prong.  Rather, the foreign law must be such that a risk exists that the litigants will be denied any remedy or will be treated unfairly."  *Id.* at 829.  Thus, while plaintiff vaguely alludes to the possibility that the Northern District of Texas might limit defendant's alleged waiver of arbitration beyond what this Court would find [Doc. 63 p. 15], this outcome would not constitute ineffective or unfair handling of the case under the second *Wong* factor.  And, in any event, plaintiff admits "such a result is not likely" [*Id.*].

Finally, as to the third *Wong* factor, the record is devoid of evidence that requiring plaintiff to litigate this suit in the Northern District of Texas would be "so seriously inconvenient" as to be unjust.  589 F.3d at 828.  The requisite showing for this factor "must be based on more than mere inconvenience of the party seeking to avoid the clause."  *Id.* at 829 (citing *Preferred Capital*, 453 F.3d at 722–23).  Yet plaintiff has failed to make any showing of inconvenience at all.  Instead, plaintiff merely argues that defendant has failed to carry its burden of proving the Northern District of Texas is a more convenient forum, and that forum selection clauses are not entitled to dispositive weight [Doc. 63 p. 10 (citing

*Stewart Org.*, 487 U.S. 22)]. These assertions are simply incorrect in light of the Supreme Court's recent and controlling decision in *Atlantic Marine*—which, the Court notes, plaintiff never cites in his briefs. Plaintiff also argues that transferring only some of the opt-in claims "would lead to precisely the type of ineffective resolution of claims that the FLSA's collective action mechanism was designed to prevent" [*Id.* at 14]. But this argument is moot if the Court transfers the claims of *all* plaintiffs based on a finding that *all* of them executed valid forum selection agreements. This argument also does not speak to why Tennessee, rather than Texas, is a more convenient forum.

As such, the Court concludes that the Employment Agreement's forum selection clause encompasses FLSA claims and that all three *Wong* factors suggest that the Court should enforce this agreement.

### 2.     Section 1404(a) Analysis

Having determined that the forum selection clause is enforceable, the Court must next consider whether transfer under § 1404(a) is warranted in light of that holding.

As to the first step of the § 1404(a) analysis, both personal jurisdiction and venue are proper in the Northern District of Texas. A valid forum selection clause is, standing alone, sufficient to confer personal jurisdiction on the specified forum. *See Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 248 (Tex. App. 2005) ("If a party signs a contract with a forum selection clause, then that party has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in that forum." (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985))). Venue is proper

there for the same reason. *See United States v. P.J. Dick Inc.*, 79 F. Supp. 2d 803, 807 (E.D. Mich. 2000) ("[V]enue provisions have long been subject to contractual waiver through a valid forum selection [clause]." (quoting *United States ex rel. Pittsburgh Tank & Tower, Inc. v. G & C Enters.*, 62 F.3d 35, 36 (1st Cir. 1995))).

As to the second step of the § 1404(a) analysis, the public-interest factors—the only relevant considerations, given that a forum selection clause is present—all favor transfer. Indeed, plaintiff does not really devote space in his briefs to argue otherwise. Transfer will not implicate any apparent administrative difficulties, such as court congestion. Further, this controversy is arguably more local to the Northern District of Texas than this District. Of all the various plaintiffs here, only two worked as Field Sales Managers in Tennessee, while the bulk of defendant's operations are based in Texas. These considerations, combined with the Court's analysis above regarding enforceability, indicate that this case lacks any extraordinary circumstances that would prevent enforcement of the forum selection clause. Therefore, the Court concludes that it must give effect to the parties' agreement and transfer this action to the Northern District of Texas.

## IV.    Conclusion

For the reasons explained above, the Court hereby **ACCEPTS IN WHOLE** the R&R [Doc. 86], and plaintiff's objections to the R&R [Doc. 87] are thus **OVERRULED**. Furthermore, defendant's Motion to Dismiss or, in the Alternative, Transfer Venue [Doc. 5], Motion to Transfer the Claims of the Opt-In Plaintiffs [Doc. 46], and Supplemental Motion to Transfer the Claims of the Opt-In Plaintiffs [Doc. 66], are hereby **GRANTED**.

The Clerk of Court is **DIRECTED** to **TRANSFER** this entire action to the United States District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a). In addition, the Court declines to address the remaining motions pending in this action [Docs. 7, 55, 71], finding it appropriate to permit the Northern District of Texas to resolve those motions in the first instance following transfer.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE